IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD JAY PAANA, SR., | No. 2:21-CV-0505-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 5 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 10 (minute order assigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 21 and 24.

///

///

///

1

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

**I. THE DISABILITY EVALUATION PROCESS**

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

> Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

///

| | | |
|---|---|---|
| | Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| | Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| | Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| | Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock

v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on October 23, 2017. See CAR 16.[1] In the application, Plaintiff claims disability began on October 3, 2017. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on August 11, 2020, Administrative Law Judge (ALJ) Steve Lynch. In a September 4, 2020, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. Through the date last insured – December 31, 2018 – the claimant had the following severe impairment(s): lumbar degenerative disk disease, degenerative joint disease, and obesity;

2. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the regulations;

3. Through the date last insured, the claimant had the following residual functional capacity: to perform light work except no climbing of ladders, ropes, or scaffolds, no kneeling or crawling, occasional stooping, crouching, climbing stairs and ramps. He should avoid hazards such as unprotected heights and dangerous moving machinery;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, through the date last insured, the claimant had acquired work skills from past relevant work that were transferable to other occupations existing in significant numbers in the national economy.

See id. at 19-31.

After the Appeals Council declined review on January 15, 2021, this appeal followed.

/ / /

/ / /

/ / /

/ / /

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on February 10, 2022, ECF No. 13.

### III.  DISCUSSION

Plaintiff argues: (1) the ALJ erred at Step 2 in concluding that Plaintiff's mental impairment is non-severe; (2) the ALJ erred at Step 4 in evaluating Plaintiffs subjective statements and testimony; (3) the ALJ erred by failing to adequately consider Plaintiffs obesity; and (4) because of these errors, the ALJ erred at Step 5 in evaluating Plaintiff's ability to perform other work.

**A.**     **Evaluation of Plaintiff's Mental Impairment**

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

Where, as here, there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

---

[2]     Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

5

At Step 2, the ALJ evaluated the severity of Plaintiff's impairments. See CAR 20-21. In doing so, the ALJ concluded that Plaintiff's mental impairments are not severe. As to the severity of Plaintiff's mental impairments, the ALJ stated:

> The claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe. In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering or applying information. In this area, the claimant had mild limitation. The claimant needed reminders of appointments. B6E/3. At times, treating providers assessed his cognition as fair. B5F/1. The claimant said that he had problems with memory (B6E/6) and his wife reported that medications affected his cognitive abilities and memory. B8E/1. However, at other times, treating providers noted that he was alert. B1F/13, B1F/18, 37, B5F/1. They noted that he was cognitively intact. B1F/12, 18, 36. The claimant did not need reminders to take medication. B6E/3. He was able to count change, pay bills, and handle bank accounts. B6E/4, B8E/4.
>
> The next functional area is interacting with others. In this area, the claimant had no limitation. The claimant said that he had difficulty being around other people and that he avoided social contacts. B6E/1, 5, 6. His wife said the claimant did not have the desire or energy to socialize. B8E/6. However, treating providers noted that he made direct eye contact and was interactive (B1F/5) and that his eye contact was good. B5F/1. They noted that he was cooperative. B1F/13, 18, 37, B7F/6. Treating providers noted that his mood and affect were normal. B1F/18, 37, B7F/6. They noted that he was pleasant. B4F/8. The claimant shopped in stores. B6E/4, B8E/4.
>
> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant had mild limitation. The claimant reported problems with concentration. B6E/5. He said that he had problems completing tasks and had to re-read written instructions. B6E/6. However, treating providers noted that his attention span and concentration were normal.
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant had no limitation. The claimant did household chores, at times. B6E/2, B8E/3. He performed outside chores. B6E/3, B8E/3. He fed and watered the animals. B6E/2. He had no problem with tasks of personal care. B6E/2. The claimant prepared his own, simple meals. B6E/3, B8E/3. He was able to handle stress. B8E/7.

///

///

> Because the claimant's medically determinable mental impairments caused no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they were non-severe (20 CFR 404.1520a(d)(1)).

CAR 20-21.

Plaintiff argues that the ALJ's determination failed to take into consideration his depression combined with the mental effects of his pain. See ECF No. 21, pgs. 9-10. Plaintiff alleges that, had his depression and mental effects of pain been considered together, there would have been "more than a minimal effect on his ability to work." Id. at 10.

Plaintiff's argument is unpersuasive. As Defendant notes, the ALJ's analysis at Step 2 and later at Step 4 acknowledged that Plaintiff's impairments were considered in combination. See CAR 17-29. Plaintiff's citation to Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), is unavailing. In that case, the Ninth Circuit found error at Step 3 with the ALJ's evaluation of the listings. See id. at 829-30. The court noted: "Indeed, the medical experts appear to agree that the part of his [Lester's] limitations arising from his physical impairment – acute pain – cannot easily be segregated from the part arising from his mental impairments." Id. at 829. The Court further stated:

> . . .Pain merges into and becomes a part of the mental and psychological responses that produce the functional impairments. The components are not neatly separable. Given that the consequences of Lester's physical and mental impairments are so inextricably linked, the Commissioner must consider whether these impairments *taken together* result in limitations equal in severity to those specified by the listings.

Id. at 829-30.

Here, there is no evidence, as there was in Lester, that Plaintiff's pain symptoms and his mental impairments are "inextricably linked." Additionally, Lester considered the ALJ's analysis at Step 3 relating to the listings and was not discussing the ALJ's obligations with respect to determining severity at Step 2.[3]

///

---

[3] Plaintiff raises no argument regarding the ALJ's evaluation at Step 3. Plaintiff's argument concerning the evaluation at Step 4 of Plaintiff's subjective statements and testimony concerning the limiting effects of pain is discussed below.

B.      **Evaluation of Plaintiff's Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Ci////r. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to

8

follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

/ / /

/ / /

9

At Step 4, the ALJ analyzed Plaintiff's subjective statements and testimony. See CAR 22-27. The ALJ first summarized Plaintiff's statements and testimony as follows:

> The claimant testified that he injured his back while working as a Deputy Sheriff and was retired medically. He lives on 1.8 acres. His wife has a horse. He had neck discectomy and back surgery in the past year. He had back surgery in May of 2020 because of tingling in both of his arms and he began to drop things. He has treated with a pain center since approximately 2014. He continues on opiate pain medication, despite his surgeries. The neck surgery improved numbness and he no longer drops things. He has not yet seen much improvement from the back surgery as of yet; his doctors advised him that it will take a while. The claimant treats with psychiatry monthly, and is prescribed medications, including medication for sleep. He had surgery for an ankle injury. He is doing well since ankle surgery. The claimant testified that his condition has gradually worsened since his last hearing. His weight has increased over the past couple of years. He had a spinal cord stimulator trial after his last hearing, and it was beneficial, but workers' compensation did not approve permanent implantation. When the spinal cord stimulator was removed, his pain worsened. He underwent a second radiofrequency procure in October of 2017, but received no relief. His pain at that time was worse than at the time of the prior hearing. The claimant testified that he has used a cane to walk when he goes outside the house for approximately three years. He has not been to physical therapy as of yet but is able to lift approximately five pounds and stand for approximately ten to fifteen minutes. He is able to sit for approximately thirty minutes. He lays down approximately three times during the day, every day, for approximately one and one-half hours, due to pain. He is not able to do anything since his surgery. Before his back surgery, he was able to occasionally lift five to ten pounds, stand for ten minutes, and sit for ten to fifteen minutes. He spent most of his time lying down. The claimant testified that he sees his mental health provider for depression and anxiety. He isolates himself and has problems with concentration and memory. He does not have the ability to concentrate at the level required in his former work. He has attacks of anxiety. He becomes anxious when around people and avoids situations in which his anxiety is increased. He has had two panic attacks in the past few years. He has approximately two days per week on which he does not get of bed, because of his pain and depression.

CAR 22-23.

The ALJ concluded Plaintiff's statements and testimony about the intensity, persistence, and limiting effects of symptoms are inconsistent. See id. at 23. The ALJ then discussed the medical record and Plaintiff's activities of daily living. See id. at 23-27.

Plaintiff raises three arguments related to the ALJ's analysis. See ECF No. 21, pgs. 12-13. First, Plaintiff argues that, without more, the conclusion by the ALJ that there was a lack of objective evidence to support subjective complaints is insufficient. See id. at 12. Second, Plaintiff asserts that the ALJ erred in relying on Plaintiff's activities of daily living. See id. at 12-

10

13. Third, citing <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 489 (9th Cir. 2015), and <u>Dexter v. Colvin</u>, 731 F.3d 977, 981 (9th Cir. 2013), Plaintiff argues that the ALJ erred by simply summarizing the record without making specific findings as to which statements and testimony were found to be unsupported and why. See <u>id.</u> at 13.

For the reasons discussed below, the Court finds Plaintiff's arguments largely persuasive.

    1.  Reliance on Activities of Daily Living

Plaintiff contends the ALJ erred by relying on activities of daily living. The Court disagrees. Here, the ALJ did not discuss Plaintiff's activities of daily living in the context of weighing Plaintiff's objective statements and testimony. At Step 4, the hearing decision is divided into two sub-discussions. First, the ALJ summarizes and discusses the weight to be given to Plaintiff's statements and testimony. See CAR 22-27. This discussion consists of a summary of Plaintiff's statements and testimony, recited above, as well as a lengthy treatment of the objective medical evidence. See <u>id.</u> Second, the ALJ evaluates each of the medical opinions of record. See <u>id.</u> at 27-29. The ALJ mentions Plaintiff's activities of daily living only in the context of the medical opinion evidence. The ALJ does <u>not</u> cite any of Plaintiff's activities of daily living in weighing Plaintiff's subjective statements and testimony.

    2.  Reliance on Objective Medical Evidence

As discussed above, the ALJ relied exclusively on the objective medical evidence in concluding that Plaintiff's statements and testimony are "inconsistent." See CAR 23. To the extent the ALJ rejected Plaintiff's statement and testimony because they are unsupported by the medical evidence, the Court agrees with Plaintiff that, without more, the ALJ erred. See <u>Bunnell</u>, 947 F.2d at 347-48. Here, the ALJ cited no evidence other than the objective medical record. Because the ALJ erred by relying solely on lack of support in the medical record, the Court will remand for further consideration of Plaintiff's statements and testimony in light of the entire record, not only the objective medical evidence.[4]

---

[4] For example, Plaintiff's activities of daily living, which were not considered in weighing Plaintiff's subjective statements and testimony.

11

3. Failure to Make Specific Findings

The Court agrees with Plaintiff's general argument that the ALJ's discussion regarding Plaintiff's subjective statements and testimony is flawed. Specifically, as Plaintiff notes, the ALJ did not link the lengthy and detailed discussion of the objective medical evidence to any particular subjective statement the ALJ found "inconsistent." The Court has reviewed the ALJ's meticulous recitation of the objective medical evidence searching for a connection to a specific statement made by Plaintiff regarding the nature of his symptoms and limitations. The Court must rely on the ALJ's analysis in exercising judicial review. Here, the Court is unable to do so because the ALJ has not offered any analysis. A remand is appropriate to allow the Commissioner to correct this error and present a more particularized decision which explains the finding with respect to Plaintiff's statements and testimony.

**C.   Obesity**

In 1999, obesity was removed from the Listing of Impairments. Obesity may still enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses." Id. at 1182; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work"). Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis. See Burch, 400 F.3d at 684.

/ / /

/ / /

/ / /

As to obesity, the ALJ stated as follows at Step 3:

> The undersigned has considered and evaluated the impairment of obesity pursuant to the extensive and detailed guidelines set forth in SSR 19-2P. There is no specific medical listing regarding obesity; however, the functional limitations caused by obesity, either alone or in combination with another impairment(s), may medically equal a listing. People with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately.
>
> Each case is evaluated based on the information in the case record, as obesity in combination with other impairments may or may not increase the severity or functional limitations of the other impairment(s). Accordingly, the undersigned has fully considered obesity in the context of the overall record evidence in making this decision.

CAR 21-22.

At Step 4, the ALJ noted Plaintiff's weight in summarizing the subjective statements and testimony: "His weight has increased over the past couple of years." Id. at 22. The ALJ also noted the following at Step 4:

> With regard to the claimant's obesity, the undersigned has given consideration to Social Security Ruling 19-2p, which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairment identified. Here, the claimant is five feet ten inches and weighed 286 pounds. B6F/26. Based on these measurements, the claimant's body mass index (BMI) was 41.11, which is obese.

CAR 26.

Plaintiff argues the ALJ erred by not providing analysis. See ECF No. 21, pg. 11. According to Plaintiff:

> . . .Simply citing the legal standards without analysis of how plaintiff's BMI of 40 actually impacts his impairments is insufficient under SSR 19-2p. The ALJ did not address how plaintiff's obesity effected his other impairments.

ECF No. 21, pg. 11.

/ / /

Defendant contends the ALJ's analysis was sufficient. See ECF No. 24, pgs. 17-18. First, Defendant argues that the ALJ necessarily considered the impact of Plaintiff's obesity on the ability to work by limiting Plaintiff to a reduced range of light work. See id. at 17. Second, Defendant argues that Plaintiff has not cited to any objective evidence indicating obesity resulted in any further limitation on Plaintiff's ability to perform work-related activities. See id. at 17-18.

Defendants' argument is persuasive. As indicated above, the ALJ noted that Plaintiff is obese and made specific reference to Plaintiff's weight and BMI. As Defendants notes, however, Plaintiff has not met his burden of establishing that obesity results in functional limitation. Plaintiff has cited to no evidence or medical opinion indicating that his ability to perform work-related activities is compromised due to obesity. To the contrary, Plaintiff has testified to the ability to engage in a wide-range of physical activities, including horse-back riding, despite obesity.

### D. Vocational Findings

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on

///
///
///

exertional strength factors only.[5]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary

---

[5] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).  Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ first determined that Plaintiff had acquired transferrable skills. See CAR 30. The ALJ stated:

> The vocational expert testified that the claimant's past relevant work as deputy sheriff was skilled with a specific vocational preparation (SVP) code of 5 and required the following transferable skills: evaluating and profiling human behavior; documentation of legal documents and paperwork; testifying in court; creating and writing reports and incident reports; familiarity with the state, federal and local policies and procedures for law enforcement; and use of self-protection and weaponry.

CAR 30.

The ALJ then concluded that Plaintiff was not disabled through the date last insured because Plaintiff was able perform other jobs. See id. at 30-31. Specifically, the ALJ stated:

> The vocational expert was asked whether there were occupations that could be performed by an individual having the same age, education, past relevant work experience, and residual functional capacity as the claimant had through the date last insured. The vocational expert responded and testified that representative occupations such an individual could have performed include: jailer, DOT 372.367-014, classified as light semi-skilled work with an SVP of 4, with 400,000 jobs nationally; and prevention loss worker, DOT 372.667-038, classified as light semiskilled work with an SVP of 3, with 300,000 jobs nationally.

CAR 30-31.

Plaintiff argues that the ALJ's vocational findings lack evidentiary support because the ALJ relied on vocational testimony based on flawed hypotheticals. See CAR 21, pgs. 14-15. In making this argument, Plaintiff assumes the ALJ erred for the reasons discussed above. See id. According to Plaintiff:

> Because the ALJ failed to properly consider plaintiff's mental impairments, obesity, and credibility, the ALJ's RFC (i.e., the hypothetical used to deny plaintiff's case) does not reflect all of plaintiff's limitations.

Id. at 15.

Given the flawed analysis of Plaintiff's subjective statements and testimony at Step 4, the Court cannot say that the ALJ relied on vocational expert testimony in response to accurate hypotheticals posed at Step 5. A remand is appropriate for renewed vocational findings following a more detailed analysis at Step 4 regarding Plaintiff's subjective statements and testimony.

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 21, is granted;

2. Defendant's motion for summary judgment, ECF No. 24, is denied;

3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 16, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE